IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KELLY J. VAY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 14-769 |
| | ) | Hon. Nora Barry Fischer |
| ROBERT HUSTON, Administrator, Laboratory Director of the Medical Examiner of Allegheny County, in his individual capacity; STEPHEN PILARSKI, former Administrator of the Office of the Medical Examiner of Allegheny County and currently Deputy Manager of Allegheny County, in his individual capacity; MICHAEL BAKER, former Manager of Morgue Operations, in his individual capacity; and MICHAEL CHICHWAK, Manager of Investigations, in his individual capacity, | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

I.  INTRODUCTION

Pending before the Court are Plaintiff's Motion for Leave to File Third Amended Complaint, (Docket No. 96), and Defendants' Motion to Strike Immaterial, Impertinent, and Scandalous Matter, (Docket No. 93). Plaintiff's Motion seeks Leave of Court to file a Third Amended Complaint, incorporating First Amendment counts that were previously not brought. (Docket No. 96). Defendants' Motion, (Docket No. 93), requesting that the Court strike paragraphs 8–16 of "Plaintiff's Motion to Quash/Modify Subpoena to Jen Sullivan; Alternatively, Plaintiff's Motion for Protective Order Pursuant to Rules 26(c), 32(5)(A) & 45(c)(1)," (Docket No. 91), argues that those paragraphs are immaterial, impertinent, and/or scandalous, (Docket No. 93).

1

II. LEAVE TO AMEND COMPLAINT

a. Standard

A party seeking leave to amend the pleadings after the deadline set by the Court's Case Management Order must satisfy the requirements of Rule 16(b)(4) of the Federal Rules of Civil Procedure. *See Walker v. Centocor Ortho Biotech, Inc.*, 558 Fed. App'x 216, 221–22 (3d Cir. 2014) (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). A Case Management Order "may be modified only for good cause and with the judge's consent." FED.R.CIV.P. 16(b)(4). Good cause requires a demonstration of due diligence. *Race Tires Am., Inc.*, 614 F.3d at 84. "Many courts have recognized that '[w]here . . . the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.'" *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D 112, 119 (W.D. Pa. Sep. 15, 2015) (Fischer, J.) (quoting *Price v. Trans Union, LLC*, 737 F.Supp.2d 276, 280 (E.D. Pa. 2010)).

Only once the moving party demonstrates good cause under Rule 16(b)(4) can the Court consider its Motion to Amend under Rule 15's standard. *Cf. Walker*, 558 Fed. App'x at 221–22 (citing *Race Tires Am., Inc.*, 614 F.3d at 84). "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." FED.R.CIV.P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "[M]otions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citations omitted). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 200 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). "It is

well-settled that prejudice to the non-moving party is the touchstone for the denial of [leave to file] an amendment." *Cornell & Co. v. Occupational Safety and Health Review Com'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). "As to prejudice, the Court of Appeals has 'considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Graham*, 271 F.R.D. at 123 (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). "Given the liberal standard under Rule 15(a), 'the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility.'" *Id.* (citing *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 700 (E.D. Pa. 2007)). The test under Rule 15(a) "is in the disjunctive, meaning that if [Defendants] meet[] [their] burden to prove any one of these elements, the [amendment] should not be permitted." *Id.*

    b. Analysis

        i. Rule 16

Generally, Plaintiff's main argument in support of her Motion to Amend is that uncovering new information during the course of discovery in this matter allows her to bring a First Amendment claim that she was otherwise unable to previously support. (Docket No. 96 *passim*). Defendants counter that all information necessary to support a *prima facie* First Amendment claim[1] was in Plaintiff's possession as of August 2013, and was known by her attorney by June 2014, when he first filed this case. (Docket No. 121 at 5–6).

Plaintiff's purported First Amendment claim arises out of a letter (hereinafter "the Letter," located at Docket No. 151-1) she was allegedly involved in writing and sending to

---

[1] As a public employee, to prove a First Amendment retaliation claim, Plaintiff must demonstrate "that the speech involves a matter of public concern and the employee's interest in the speech outweighs the government employer's countervailing interest in providing efficient and effective services to the public," and that "the speech [was] a substantial or motivating factor in the alleged retaliatory action." *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004).

3

Defendant Rich Fitzgerald, County Executive, as well as the Pittsburgh Tribune Review newspaper. (Docket No. 96 at ¶ 12). The Letter was referenced in an article published by the Tribune (hereinafter "the Article," reproduced in whole in an email at Docket No. 96-2) on August 3, 2013, and generally complains that the County Medical Examiner's Office was failing to conduct autopsies in "cases that meet the criteria for a forensic autopsy." (Docket Nos. 96-2, 151-1). The Letter was signed "The Forensic Investigators of the Allegheny County Medical Examiner's Office," and is dated August 1, 2013. (Docket No. 151-1).

Plaintiff's Counsel claims that he "was first made aware of" the Article on February 26, 2015, at the deposition of Allison Bixby,[2] when it was used as an exhibit by Defense Counsel. (Docket No. 96 at ¶ 11). However, Plaintiff's Counsel had a duty to investigate the factual underpinnings of his client's claims. *See* FED.R.CIV.P. 11. Given the temporal proximity of the writing of the Letter, the publication of the Article, and Plaintiff's suspension, stemming from an altercation regarding the Article and Letter, the existence of the Letter clearly would have been apparent after a reasonable interview with Ms. Vay. Additionally, it is good practice to utilize publicly accessible sources of information (*e.g.*, newspapers, Internet searches, Freedom of Information Act requests, etc.) to investigate a client's claims. In fact, the Court routinely utilized such sources in private practice and continues to do so.

Further, the Letter, the Article, and a "Report of Incident," (Docket No. 121-2), discussing the events surrounding Plaintiff's August 2013 suspension were produced in Defendants' initial disclosures on November 25, 2014.[3] (Docket Nos. 96 at 3 n.2, 121 at 6 n.2).

---

[2] Allison Bixby works as a forensic investigator at the Allegheny County Medical Examiner's Office. (Docket No. 128 at 10:9).

[3] In a later filing, Plaintiff states that the "Report of Incident" was not produced until March 26, 2015. (Docket No. 149 at 8). However, as noted both during the June 1, 2015 oral argument and presented in Defendants' Supplemental Brief, a simple Internet search of Plaintiff's name along with terms such as "medical examiner" or "Allegheny County" would have lead Counsel straight to the Article referencing the Letter "at the incipient stage of this litigation." (Docket No. 150 at 23:14–24:6; Docket No. 151 at 5). *See See Wise v. Washington Cnty.*, Civ. No.

Despite same, Plaintiff's Counsel claims that he remained unaware of the Article and the Letter because "it was 'buried' amidst thousands of other documents until it was marked as [] Exhibit I in the Allison Bixby Deposition." (Docket No. 96 at 3 n.2). Plaintiff's Counsel's apparent failure to review disclosures clearly does not demonstrate the diligence necessary to find good cause as counsel has a duty to diligently review discovery. *See Race Tires Am., Inc.*, 614 F.3d at 84–85 (affirming denial of Motion for Leave to Amend Complaint when movant complained, *inter alia*, that "key facts" were hidden within "hundreds of thousands of late-produced documents").

Plaintiff also argues that he was first made aware "that Allegheny County Manager William McKain had a meeting within a day or two of the August 3, 2013 article with Dr. Williams, Stephen Pilarski, Robert Huston and other regarding [the Article]," during the April 21, 2015 deposition of Robert Huston.[4] (Docket No. 96 at ¶ 15). Plaintiff contends that this revelation is crucial as it supports the second element of her proposed First Amendment claim (*i.e.*, that the speech at issue – the Letter – was a substantial or motivating factor in Plaintiff's suspension). (Docket No. 149 at 8). However, in her own deposition, taken on March 26, 2015, Plaintiff stated that she was aware that Baker knew she was involved with writing the Letter. (*Id.*). Further, the reason Plaintiff was in Baker's office on the day in question was to discuss the Letter. (Docket No. 96 at ¶ 18).

Crediting Plaintiff's arguments, the following is clear:

1. Plaintiff assisted in writing the Letter, dated August 1, 2013. (Docket No. 96 at ¶ 12)

2. The Article was published on August 3, 2013. (*Id.* at ¶ 13).

---

10-1677, 2015 WL 1757730, at *16–19 (W.D. Pa. Apr. 17, 2015) (discussing a plaintiff's attorney's duty to investigate prior to initiation of suit).

[4] Robert Huston, a named defendant in this action, is Administrator, Laboratory director of the Office of the Medical Examiner of Allegheny County, and acted in a supervisory position over Plaintiff. (*See* Docket No. 148 at ¶ 3).

3. Michael Baker met with Plaintiff regarding the Article and Letter on August 9, 2013. (*Id.* at ¶ 18).

4. During the August 9, 2013 meeting, "[a] difference of opinion arose between Michael Baker and Plaintiff about the [L]etter and the [Article]. (*Id.* at ¶ 19).

5. Plaintiff "was suspended for 26 days as a result of the August 9, 2013 meeting." (*Id.* at ¶20).

These facts were known to Plaintiff as they occurred (*i.e.*, ten months prior to this suit being initiated). "Where . . . the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Price*, 737 F.Supp.2d at 280. Further, "[c]ourts often deny leave to amend a pleading when the moving party either knew or should have known the facts on which the amendment is based when drafting the original pleading, but failed to include such facts in the original pleading." *Bowser Cadillac, LLC v. General Motors Corp.*, Civ. No. 07-1149, 2008 WL 2802523, at *2 (W.D. Pa. July 18, 2008) (citing William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 8:406 (2008) in turn citing *Hoover v. Blue Cross & Blue Shield of Alabama,* 855 F.2d 1538, 1544 (11th Cir.1988)). While Huston's deposition testimony certainly provides support for a potential First Amendment claim, it strains belief to credit the argument that such a claim could not have been brought *but for* Huston's testimony, given the facts known by Plaintiff at the time this suit was filed. (Docket No. 96 at ¶¶ 12–20). Accordingly, Plaintiff has failed to show good cause for this Court to grant leave to amend. *See Price*, 737 F.Supp.2d at 280; *see also Bowser Cadillac, LLC*, 2008 WL 2802523, at *2.

    ii. Rule 15

Even though the Court concludes that Plaintiff has failed to demonstrate the necessary good cause under Rule 16, it will briefly address Plaintiff's Motion under the Rule 15 standard.

"Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). "It is well-settled that prejudice to the non-moving party is the touchstone for the denial of [leave to file] an amendment." *Cornell & Co. v. Occupational Safety and Health Review Com'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). "As to prejudice, the Court of Appeals has 'considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Graham*, 271 F.R.D. at 123 (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).

Here, while Plaintiff claims she needs no further discovery to bring her First Amendment claim, (Docket No. 96 at ¶ 22), Defendants have stated that, because discovery was conducted only as to the pending gender discrimination claims, various people would need to be re-deposed, should amendment be permitted, (Docket No. 150 at 12–13). Discovery in this matter was set to close on May 1, 2015, over two months ago. (Docket No. 55). At that time, the Court ordered that *no further extensions would be granted*. (*Id.*).

This new theory would entail significant additional discovery, related expense, and delay. As such, it contravenes Rule 1, which mandates that the Rules of Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." FED.R.CIV.P. 1. Accordingly, even if Plaintiff had demonstrated good cause, the Court would deny the Motion for Leave as unduly prejudicial to the Defendants.

III.   MOTION TO STRIKE

a. Standard

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED.R.CIV.P. 12(f). "The language of [Federal Rule of Civil Procedure 12(f) ] is permissive so that the Court has a wide measure of discretion in determining whether to grant or deny a motion under it." *Sampath v. Concurrent Technologies Corp.,* Civ. No. 03-264J, 2006 WL 1207961, at *3 (W.D. Pa. May 3, 2006) (citing *Higgins v. Shenango Pottery Co.,* 99 F.Supp. 522, 525 (W.D. Pa.1951)); *Korman v. Trusthouse Forte PLC,* Civ. A. No. 89-8734, 1991 WL 3481, at *1 (E.D. Pa. Jan.11, 1991) ("A district court has broad discretion in deciding Rule 12(f) motions").

"The purpose of a Rule 12(f) motion to strike is to 'clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters.'" *Claude Worthington Benedum Found. V. Harley*, Civ. No. 12-1386, 2013 WL 2458457, at *16 (W.D. Pa. June 6, 2013) (quoting *United States v. Educ. Mgmt. Corp.*, 871 F.Supp.2d 433, 460 (W.D. Pa. 2012)). "Motions to strike are disfavored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civ. No. 09-290, 2011 WL 1044652, at *1 (W.D. Pa. Mar. 18, 2011) (citations and quotations omitted). "'Scandalous matter' has been defined as 'that which improperly cases a derogatory light on someone, most typically on a party to the action.'" *Donnelly v. Commonwealth Fin. Sys., Inc.*, 2008 WL. 762085, at *4 (M.D. Pa. Mar. 20, 2008) (quoting *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988) and 5 C. Wright & A Miller § 1382, at 826)). "'Scandalous pleading must 'reflect cruelly' upon the defendant's moral character, use 'repulsive language' or 'detract from the dignity of the court.'" *Id.* (citing *Carone*, 121 F.R.D. at 233, in turn citing

*Skadegaard v. Farrell*, 578 F.Supp. 1209, 1221 (D.N.J. 1984)).

      b. Analysis

Here, Defendants request that the Court strike, (Docket No. 93), paragraphs 8–16 of Plaintiff's Motion to Quash/Modify Subpoena to Jen Sullivan; Alternatively, Plaintiff's Motion for Protective Order Pursuant to Rules 26(c), 32(5)(A) & 45(c)(1), (Docket No. 91). Defendants argue that the paragraphs at issue are impertinent, as they are not necessary for the Court's resolution of Plaintiff's motion, and that they contain scandalous matter that is derogatory and reflects poorly upon Defendants' counsel and detracts from the dignity of the court. (Docket No. 93 at 2). Plaintiff responds that the matter is not impertinent as it is "material and pertinent to the relief which has been sought in Plaintiff's Motion to Quash Subpoena to Jenn Sullivan because the facts show a *pattern of conduct*." (Docket No. 122 at 2 (emphasis in original)). Defendants reply that, as the Motion at issue was to quash a third-party subpoena, "[t]he only legal basis [Plaintiff] could have to quash [it] was if she were seeking to protect her own personal right or privilege." (Docket No. 129 at 1 (citing *In re Actiq Sales & Mktg. Practices Litig.*, Civ. No. 07-4492, 2011 WL 5509434, at *2 (W.D. Pa. Nov. 10, 2011)). Accordingly, Defendants argue, since the paragraphs Defendants seek to have stricken have nothing to do with Plaintiff's assertion of a personal right or privilege, they should be stricken. (Docket No. 129 at 2).

The Court agrees with Defendants' position. The paragraphs Defendants seek to have stricken relate exclusively to Defense Counsel's alleged behavior in setting and taking depositions in this matter. (Docket No. 91 at ¶¶ 8–16). The only way the Court could have granted the relief Plaintiff sought in her Motion was a showing of personal right or privilege. *See In re Actiq Sales & Mktg. Practices Litig.*, 2011 WL 5509434, at *2. No single allegation in these paragraphs approaches an averment regarding Plaintiff's personal right or privilege as to

the deposition of Jenn Sullivan.[5] (Docket No. 91 at ¶¶ 8–16). Accordingly, the averments in paragraphs 8–16 of Plaintiff's Motion to Quash, (Docket No. 91), are clearly immaterial. Further, a mere reading of the contentions shows that they are prejudicial to Defense Counsel. (*Id.* at ¶¶ 8–16). Thus, they shall be stricken from the record.

Additionally, the Court finds that the allegations contained within paragraphs 8–16 of Plaintiff's Motion to Quash, (Docket No. 91), qualify as "scandalous," and would independently deserve to be stricken for that reason. The allegations clearly "detract from the dignity of the court," *Carone*, 121 F.R.D. at 233, (citing *Skadegaard* 578 F.Supp. at 1221)), as they reflect nothing more than *ad hominem* attacks against Defense Counsel. *See Collura v. City of Phila.*, 590 F.App'x 180, 185 (3d Cir. 2014).

The Court expects counsel to adhere to the rules of professionalism, as noted in its Policies and Procedures. Policies and Procedures of Judge Nora Barry Fischer, §I.I (eff. Feb. 5, 2013) (available at: http://www.pawd.uscourts.gov/Documents/Judge/fischer_pp.pdf). Hence, failure to act professionally throughout the course of these proceedings may result in sanctions. *See Wise*, 2015 WL 1757730 (W.D. Pa. Apr. 17, 2015).

IV. CONCLUSION

AND NOW, this 21st day of July, 2015, for the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File Third Amended Complaint, (Docket No. [96]), is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Immaterial, Impertinent, and Scandalous Matter, (Docket No. [93]), is GRANTED. Accordingly, Paragraphs 8–16 of Plaintiff's Motion to Quash Subpoena & Notice of Deposition of Jen Sullivan, (Docket No.

---

[5] In fact, Plaintiff's entire argument in support of quashing the subpoena was purely technical, as the deponent was allegedly not given adequate notice. (Docket No. 91).

[91]), are STRICKEN from the record.

          *s/Nora Barry Fischer*
          Nora Barry Fischer
          United States District Judge

cc/ecf: All counsel of record